UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
                                  :
JAMES RICKS,                      :
                                  :     No. 07 Civ. 9849 (WHP)
            Plaintiff,            :
                                  :
        -against-                 :     MEMORANDUM & ORDER
                                  :
P.O. BRIAN O'HANLON, SHIELD 10952,:
4 to 12 PM, P.O. JEREMY RODRIGUEZ,:
SHIELD 24012, 4 to 12 PM, P.O. KEVIN
CASEY, SHIELD 3158,               :
                                  :
            Defendants.           :
                                  :
----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/19/2010

WILLIAM H. PAULEY III, District Judge:

Plaintiff pro se James Ricks ("Ricks") brings this federal civil rights action against New York City Police Officers Brian O'Hanlon ("Officer O'Hanlon"), Jeremy Rodriguez ("Officer Rodriguez"), and Kevin Casey ("Officer Casey"), claiming excessive force in violation of the Fourth and Fourteenth Amendments and inadequate medical treatment in violation of the Fourteenth Amendment. Defendants move for summary judgment. For the following reasons, Defendants' motion is granted in part and denied in part.

BACKGROUND

On June 13, 2006, Ricks was living with Tina Jennings ("Jennings") in violation of an Order of Protection prohibiting him from having contact with her. (Defendants' Statement Pursuant to Local Rule 56.1 dated June 26, 2009 ("Defs. 56.1 Stmt.") ¶¶ 5-8; Plaintiff's Statement Pursuant to Local Rule 56.1 dated Aug. 4, 2009 ("Pl. 56.1 Stmt.") ¶¶ 5-8; Declaration

of Bradford C. Patrick dated June 26, 2009 ("Patrick Decl.") Ex. G: Order of Protection dated Oct. 14, 2003.) At 8:49 p.m., Jennings called the police and reported that Ricks was threatening her and that he was in violation of a protective order. (Defs. 56.1 Stmt. ¶¶ 14-16; Pl. 56.1 Stmt. ¶¶ 14-16.)

I. Police Pursuit & Arrest

Officers Casey and Daniel MacSweeney ("Officer MacSweeney") responded to Jennings's 911 call. (Patrick Decl. Ex. E: Declaration of Police Officer Kevin Casey dated June 18, 2009 ("Casey Decl.") ¶¶ 3, 8-11 & Ex. K: Felony Complaint dated June 14, 2006 ("Felony Compl.") at 1-2.) When they arrived at the scene, Ricks was inside the apartment building and spoke briefly to them. (Defs. 56.1 Stmt. ¶¶ 21-24; Pl. 56.1 Stmt. ¶¶ 21-24.) The parties dispute whether Ricks assaulted the officers during that brief encounter but agree that Ricks fled. (Patrick Decl. Ex. F: Deposition of James Ricks dated Mar. 11, 2009 ("Ricks Dep.") at 103, 106-110; Casey Decl. ¶¶ 23-28, 32.)

At 9:18 p.m., Officer Casey placed an officer-in-need-of-assistance call. Officers O'Hanlon and Rodriguez responded to that radio call. (Defs. 56.1 Stmt. ¶¶ 28, 36.) When they arrived at Jennings' apartment building, they saw Ricks running to a nearby parking lot and entering a van. (Defs. 56.1 Stmt. ¶¶ 40-44; Pl. 56.1 Stmt. ¶¶ 40-44.) Ricks ignored the officers' instructions to get out of the van and drove away instead. (Defs. 56.1 Stmt. ¶¶ 45, 47-48, 51; Pl. 56.1 Stmt. ¶¶ 45, 47-48, 51.) Officers O'Hanlon and Rodriguez claim that Ricks nearly hit them twice as he exited the parking lot. (Defs. 56.1 Stmt. ¶¶ 53, 57.) The officers contend that they did not pursue Ricks, and he offers nothing to controvert their assertion. (Patrick Decl. Ex. C: Declaration of Police Officer Brian O'Hanlon dated June 23, 2009 ¶¶ 43-48 & Ex. D:

2

Declaration of Police Officer Jeremy Rodriguez dated June 18, 2009 ¶¶ 35-40; Pl. 56.1 Stmt. ¶¶ 60-62; Plaintiff's Affirmation in Opposition to Motion for Summary Judgment ("Pl. Aff.") at 3-4, 6, 9.)

When Ricks left the scene, he turned into oncoming traffic and traveled south in a northbound lane over the Broadway Bridge from the Bronx into Manhattan. (Defs. 56.1 Stmt. ¶¶ 63-66; Pl. 56.1 Stmt. ¶¶ 63-66; Patrick Decl. Ex. J: Plea Minutes from People v. James Ricks dated July 1, 2008 ("Plea Minutes") at 7-9.) Ricks maintains that he pulled over after crossing the Broadway Bridge when he saw flashing police lights behind him. (Ricks Dep. at 145-46, 150-52.) He claims that when he opened the van door, a police vehicle collided with the van and pinned him against the driver's side door. (Ricks Dep. at 152-54, 156; Plea Minutes at 9.) Ricks further asserts that officers maced and hit him while he was pinned. (Ricks Dep. at 157-63.) After he was freed from the van, Ricks contends that the officers kicked and punched him. (Ricks Dep. at 163, 165.) Ricks cannot identify those officers. (Ricks Dep. at 156-58, 160-61.)

A police report describes the incident differently. It recounts that Ricks's van struck a wooden construction pillar on Broadway, that Officer MacSweeney maced Ricks, and that Officer Casey ordered him out of the van at gunpoint. (Pl. Aff. Ex. B: NYPD Memorandum from 3rd Platoon Commander, 50 [sic] Precinct dated June 14, 2006 ("June 14 Memo").) According to the report, Ricks fled on foot and was apprehended in a nearby parking garage. (June 14 Memo.) The report also notes injuries to an officer as a result of a patrol car accident. (June 14 Memo.) A Line of Duty Injury Report reveals that Officer Casey suffered wrist and ankle injuries and inhaled pepper spray as a result of a violent struggle, all "sustained at 49 West 225 Street and during the persuit [sic] and apprehension of the perp." (Pl. Aff. Ex. D: Line of Duty Injury Report dated June 14, 2006 ("Injury Report").)

3

Ricks's arrest report states that Ricks crashed his van into a wooden barricade and then fled on foot one block before officers apprehended him in a parking garage. (Felony Compl. at 3; Patrick Decl. Ex. N: NYPD Omniform System Arrest Report ("Arrest Report") at 1.) Officer MacSweeney chased Ricks. (Felony Compl. at 3.) Two police officers were injured in a vehicular accident while three others were hurt arresting Ricks. (Arrest Report at 1.) Although Officer Casey does not deny that he was present at Ricks's arrest, he denies "punch[ing], kick[ing], or hit[ting] [Ricks] with a nightstick" or "witness[ing] [Ricks] being punched, kicked or hit with a nightstick." (Casey Decl. ¶¶ 33-34.) He also denies hitting Ricks with a police vehicle or using pepper spray on him. (Casey Decl. ¶¶ 35-37.) Officer Casey asserts that he was never informed of Ricks's need for medical treatment and was not present when Ricks was booked at the 50th Precinct. (Casey Decl. ¶¶ 38-40.)

## II. Booking and Medical Treatment

Following Ricks's arrest at 9:30 p.m., unidentified officers transported him to the 50th Precinct. (Defs. 56.1 Stmt. ¶¶ 71, 76, 78; Pl. 56.1 Stmt. ¶¶ 71, 76, 78.) Ricks testified that he was bleeding and burned from the mace and that he requested medical treatment during transport. (Ricks Dep. at 173-74.) He claims that he was held for at least two hours in a cell before receiving any medical treatment. (Pl. 56.1 Stmt. ¶ 79; Ricks Dep. at 176.) When he asked for water, he claims an unidentified officer slammed him on the floor and fractured his wrist. (Ricks Dep. at 177-78.) Ricks does not know whether any of the police officer Defendants were present for his booking at the 50th Precinct. (Ricks Dep. at 176.) Ricks acknowledges that the pepper spray was rinsed from his face and body before he was transported to North Central Bronx Hospital. (Ricks Dep. at 180, 182-83.)

The NYPD disputes Ricks's account of what occurred at the 50th Precinct. The police claim to have called the New York City Fire Department regarding an "INJ PERP" at 9:30 p.m. (Defs. 56.1 Stmt. ¶ 77; Patrick Decl. Ex. L: NYC Fire Department Computer Aided Dispatch Report dated June 13, 2006.) The Ambulance Call Report relating to Ricks's treatment shows that an ambulance arrived at the 50th Precinct at 9:54 p.m. (Patrick Decl. Ex. M: Ambulance Call Report dated June 13, 2006 ("Ambulance Call Report") at 1.) It reports that Ricks fell during a struggle with officers and identifies the following injuries: a one-inch laceration to the top of Ricks's head, visible bleeding, pain in his head and left wrist, and full-body burning sensation from macing. (Ambulance Call Report at 2.) EMTs administered on-site treatment and transported Ricks to the hospital. (Ambulance Call Report at 1-2.)

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248. If the moving party meets its burden to "show that no genuine factual dispute exists," Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)), the non-moving party must then set forth "specific facts showing that there is a genuine

5

issue for trial," Fed. R. Civ. P. 56(e); see also Celotex, 477 U.S. at 322-23. In determining whether a genuine factual dispute exists, the court must accept as true the non-moving party's evidence, if supported by affidavits or other evidentiary material, and draw all justifiable inferences in his favor. Liberty Lobby, 477 U.S. at 255.

The same standards apply to a pro se litigant, but "such a litigant is given special latitude in responding to a summary judgment motion." Pabon v. Wright, No. 99 Civ. 2196 (WHP), 2004 WL 628784, at *4 (S.D.N.Y. Mar. 29, 2004) (citation omitted); see also Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988). Courts must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions 'to raise the strongest arguments they suggest.'" Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

II. Section 1983 Claims

A. Personal Involvement of Defendants in Use of Excessive Force

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991). To survive a motion for summary judgment, there must be some evidence of the personal involvement of each defendant in the alleged constitutional deprivation. Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986); Universal Calvary Church v. City of N.Y., No. 96 Civ. 4606 (RPP), 2000 WL 1538019, at *16 (S.D.N.Y. Oct. 17, 2000). Once a defendant "'document[s] his assertion of no personal involvement' by specifying in a summary judgment motion the extent of his involvement and denying involvement in ways alleged," the plaintiff is required to respond with evidence

sufficient to raise a genuine dispute for trial. Universal Calvary Church, 2000 WL 1538019, at *17 (quoting Williams, 781 F.2d at 324). "A police officer is personally involved in the use of excessive force if the officer either: (1) directly participates in an assault; or (2) is present during the assault, and fails to intercede on behalf of the victim even though he had a reasonable opportunity to do so." Vesterhalt v. City of N.Y., No. 07 Civ. 2142 (MGC), 2009 WL 3424122, at *3 (S.D.N.Y. Oct. 26, 2009) (citing Ricciuti v. N.Y. City Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997)).

Ricks asserts that he was subjected to excessive force (1) at the scene of his apprehension and (2) at the booking desk of the 50th Precinct. Officers O'Hanlon and Rodriguez deny that they were present at Ricks's apprehension or booking or that they used force or witnessed force used upon Ricks. Officer Casey denies that he was present at the 50th Precinct booking desk. These denials suffice to document their assertion of no personal involvement. See Husbands v. City of N.Y., No. 05 Civ. 9252 (NRB), 2007 WL 2454106, at *11 (S.D.N.Y. Aug. 16, 2007) (officer's denial that he kicked plaintiff constituted his assertion of no personal involvement requiring a response from plaintiff); Universal Calvary Church, 2000 WL 1538019, at *17. Ricks does not counter with any evidence that Officers O'Hanlon or Rodriguez were present during either alleged incident of excessive force or that Officer Casey was present at the 50th Precinct. See Munoz v. Martinez, No. 03 Civ. 0828 (LAK), 2005 WL 1355094, at *5 (S.D.N.Y. June 8, 2005) (arrestee "must submit some sort of evidence that [police officer] was present at the scene of the alleged assault" to survive summary judgment on personal involvement). Accordingly, this Court grants Officers O'Hanlon and Rodriguez's motion for summary judgment on Ricks's excessive force claims against them and grants summary judgment to Officer Casey on Ricks's excessive force claim at the 50th Precinct.

7

However, Ricks provides sufficient evidence of Officer Casey's personal involvement in Ricks's arrest. Although Ricks "is unable to identify the individual [officers] who allegedly assaulted him . . . [t]his omission is not per se fatal to [his] claim[]." Munoz, 2005 WL 1355094, at *4; see also Shankle v. Andreone, No. 06 Civ. 0487 (NG) (LB), 2009 WL 3111761, at *5 (E.D.N.Y. Sept. 25, 2009). "[T]he burden of identifying by name and badge number every police officer who allegedly participated in the incident cannot be placed on [the plaintiff] . . ." Universal Calvary Church, 2000 WL 1538019, at *16. Where, as with Ricks's arrest, "the acts complained of . . . if true, (e.g., mace to the eyes . . .) are likely to have prevented plaintiff from identifying which [officers] specifically engaged in the bad acts," Shankle, 2009 WL 3111761, at *5 (citing Davis v. Callaway, No. 05 Civ. 00127 (DJS), 2007 WL 1079988, at *9 (D. Conn. Apr. 9, 2007)), courts find a genuine dispute exists on personal involvement even absent a physical description or identification from a photo array as long as the plaintiff submits other competent evidence, see Shankle, 2009 WL 3111761, at *5-6 (summary judgment inappropriate on personal involvement where plaintiff testified that officers were involved in the alleged acts yet could not identify them).

Ricks submitted two police records—the June 14 Memo and the Line of Duty Injury Report—stating Officer Casey was present at and participated in Ricks's apprehension at the time of the alleged use of excessive force. See Younger v. City of N.Y., 480 F. Supp. 2d 723, 731-33 (S.D.N.Y. 2007) (summary judgment denied on personal involvement where arrestee alleged officers' presence and one police report listed them as present at the scene). While Officer Casey does not dispute his presence, he denies macing, kicking, punching, or hitting Ricks. Although Ricks cannot identify the officers who allegedly assaulted him and provides no corroborating evidence that Officer Casey committed any specific act, he "need not

establish who, among a group of officers, directly participated in the attack and who failed to intervene," Jeffreys v. Rossi, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003) (citing Fischl v. Armitage, 128 F.3d 50, 57 (2d Cir. 1997)), as long as "there [was] a realistic opportunity to intervene to prevent the harm from occurring." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994); Husbands, 2007 WL 2454106, at *11. Accordingly, because the alleged excessive force at the time of arrest was not so brief as to preclude an opportunity to intervene, this Court denies summary judgment to Officer Casey on the excessive force claim stemming from Ricks's arrest. That branch of Officer Casey's motion seeking qualified immunity is addressed later in this memorandum and order.

### B. Qualified Immunity on Excessive Force Claim

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The doctrine "serves to protect police from liability and suit when they are required to make on-the-spot judgments in tense circumstances." Lennon v. Miller, 66 F.3d 416, 424 (2d Cir. 1995). In deciding a government official's qualified immunity claim on summary judgment, the court must consider (1) "whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right"; and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson, 129 S. Ct. at 815-16 (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). While this Court is no longer required to address these two considerations serially, Pearson, 129 S. Ct. at 821, it is appropriate in this case to consider whether Ricks has shown the violation of a constitutional right.

9

### 1. Violation of a Constitutional Right

An "excessive force claim aris[ing] in the context of an arrest . . . invok[es] the protections of the Fourth Amendment," under which the constitutionality of officers' actions hinges on whether the force used was objectively reasonable. Graham v. Connor, 490 U.S. 386, 388, 394 (1989). "The first step in assessing the constitutionality of [the officers'] actions is to determine the relevant facts." Scott v. Harris, 550 U.S. 372, 378 (2007) (addressing the first prong of the Saucier qualified immunity analysis). At the summary judgment stage, this Court must construe the facts in the light most favorable to Ricks. See Scott, 550 U.S. at 378.

This Court notes that Ricks's version of events—that after pulling to the side of the road, he was pinned by a police car, hit on the head, maced, and repeatedly kicked and punched—is supported by (1) his own statements in his complaint, deposition testimony, and the plea minutes; (2) an ambulance report consistent with a blow to the head and macing; and (3) police records that he was maced.

A party's statement in the form of an affidavit or deposition testimony is at the core of evidence competent to oppose summary judgment. See Fed. R. Civ. P. 56(c), 56(e). Moreover, it is axiomatic that "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996); accord Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996) (district court must "eschew credibility assessments" at summary judgment stage).

As such, "the contrasting accounts of both" Ricks's and arresting officers' conduct leading up to Ricks's arrest "present factual issues as to the degree of force actually employed and its reasonableness." Kerman v. City of N.Y., 261 F.3d 229, 239 (2d Cir. 2001); see also Pierre-Antoine v. City of N.Y., No. 04 Civ. 6987 (GEL), 2006 WL 1292076, at *6

(S.D.N.Y. May 9, 2006) (finding that "repeatedly punching, kicking and stomping on [arrestee]" violated the Fourth Amendment). Here, "[d]espite the fact that Defendants' rendition of the facts contradicts that of [Ricks], and, notwithstanding Defendants' corroborating evidence," Ricks's "version of the incident is not limited by any fatal internal inconsistencies in his story, but primarily by the lack of corroboration of his testimony," and therefore must be credited at this stage. Rossi v. Stevens, No. 04 Civ. 1836 (KMK), 2008 WL 4452383, at *6 (S.D.N.Y. Sept. 30, 2008) (denying summary judgment where only evidence of alleged excessive force was plaintiff's own deposition testimony and some plausibly consistent medical evidence). Ricks therefore makes out a violation of a constitutional right. See Kerman, 261 F.3d at 240.

### 2. Clearly-Established Right at Issue

Government officials are entitled to qualified immunity on summary judgment unless "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson, 129 S. Ct. at 815-16 (quoting Saucier, 533 U.S. at 201). The Supreme Court has long held that the reasonableness of the force used in arrest depends upon "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396 (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)). Yet "the general tests set out in Graham and Garner . . . are cast at a high level of generality" and are "not capable of . . . mechanical application." Brosseau v. Haugen, 543 U.S. 194, 199 (2004) (citing Graham, 490 U.S. at 396). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." Lauro v. Charles, 219 F.3d 202, 214 (2d Cir. 2000) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Rather, "in the light of

pre-existing law the unlawfulness [of the alleged actions] must be apparent" to a reasonable officer. Lauro, 219 F.3d at 214 (quoting Anderson, 483 U.S. at 640).

Here, it is undisputed that upon encountering officers outside his apartment, Ricks ran out of the building and into his van, drove away despite police orders to stop, and fled in his vehicle driving the wrong way down Broadway, a major and heavily-traveled thoroughfare bridging the Bronx and Manhattan. Courts repeatedly find more considerable force, even deadly force, reasonable to terminate a suspect's vehicular flight. See Brosseau, 543 U.S. at 200 (qualified immunity appropriate where officer shot and killed suspect who fled from police, entered vehicle, and began to drive away). Even though the vehicular stage of Ricks's flight ended after two blocks, it would be reasonable for arresting officers to believe as he exited the van that he planned to continue his persistent and dangerous flight from officers on foot. See Brosseau, 543 U.S. at 200 (evaluating the reasonableness of arresting officer's actions in light that the suspect "had proven he would do almost anything to avoid capture and that he posed a major threat to, among others, the officers . . .").

However, in effecting Ricks's arrest, the officers were not entitled to use force without limit. See Sullivan v. Gagnier, 225 F.3d 161, 165-66 (2d Cir. 2000) (while "[t]he fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of some degree of force, . . . it does not give the officer license to use force without limit"). Moreover, "gratuitous force—if true—would be actionable under the case law." Johnson v. City of N.Y., No. 05 Civ. 2357 (SHS), 2006 WL 2354815, at *5 (S.D.N.Y. Aug. 14, 2006); see also Pierre-Antoine, 2006 WL 1292076, at *6 (officer was "not entitled to qualified immunity . . . because a reasonable officer would have known that repeatedly punching, kicking, and stomping on [arrestee] violated a clearly established

constitutional right not to be subjected to excessive force during arrest"). Here, the parties have offered disparate accounts of what occurred during and after Ricks's arrest. Thus, summary judgment on qualified immunity is inappropriate. Breen v. Garrison, 169 F.3d 152, 153 (2d Cir. 1999) (where "the parties' versions of the material facts differ markedly" on "the amount of force used, the injuries suffered, and the objective reasonableness of the officer's conduct . . . [t]hese differences also preclude summary judgment on the defense of qualified immunity").

Accordingly, this Court denies Officer Casey's motion for summary judgment on qualified immunity grounds.

### C. Denial of Medical Treatment

The Due Process Clause of the Fourteenth Amendment "require[s] the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police." City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983); see also Weyant, 101 F.3d at 856. When a denial of medical care claim arises in the context of arrest and pretrial detainment, "the official custodian of [the arrestee] may be found liable for violating the [arrestee's] due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need." Weyant, 101 F.3d at 856. The standard includes objective and subjective criteria: plaintiff must show (1) "[he] had a serious medical condition" and (2) "it was met with deliberate indifference." Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009) (considering inadequate medical treatment claim by pretrial detainee).

The subjective element requires the arrestee to show "something more than negligence" yet "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994); Weyant,

13

101 F.3d at 856. The defendant officer must "know[] of and disregard[] an excessive risk to [the arrestee's] health or safety; the [officer] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer, 511 U.S. at 837.

This Court need not consider whether Ricks's injuries constitute a serious medical need because Ricks failed to demonstrate that any of the Defendants acted with deliberate indifference to that need. Only "a significant delay in medical treatment" provided to an injured arrestee may "ris[e] to the level of constitutional injury." Santiago v. City of N.Y., No. 98 Civ. 6543 (RPP), 2000 WL 1532950, at *6 (S.D.N.Y. Oct. 17, 2000). Although Ricks claims that he did not receive medical attention for at least two hours following his arrest, documentary evidence shows that emergency personnel were called at the time of his arrest and that an ambulance arrived at the 50th Precinct twenty-four minutes later.

Even crediting Ricks's version of the facts, he received medical treatment from EMS personnel and hospital medical staff within two or three hours of his arrest. This does not rise to the level of deliberate indifference. See Basnight v. Rossi, No. 97 Civ. 1312 (FB), 2003 WL 722810, at *2 (E.D.N.Y. Mar. 4, 2003) (no deliberate indifference where arrestee received treatment within four hours of his arrest); Rivera v. State of N.Y., No. 96 Civ. 7697 (RWS), 1999 WL 13240, at *6-7 (S.D.N.Y. Jan. 12, 1999) (no deliberate indifference where arrestee who was shot by police was taken to the hospital an hour and a half later).

Accordingly, this Court grants Defendants' motion for summary judgment on Ricks's inadequate medical treatment claims as to all Defendants.

III. New York State Law Claims

Under New York General Municipal Law § 50-e, a plaintiff who asserts state law tort claims against a municipality or against municipal employees acting within the scope of employment must file a notice of claim within ninety days after the claim accrues or, with leave of the court, within one year and ninety days after the claim accrues. N.Y. Gen. Mun. Law §§ 50-e(1)(a), 50-e(5); see also Smart v. City of N.Y., No. 08 Civ. 2203 (HB), 2009 WL 862281, at *12 (S.D.N.Y. Apr. 1, 2009) (citing Nunez v. City of N.Y., 762 N.Y.S.2d 384, 385 (1st Dep't 2003)). Moreover, the plaintiff must commence the action itself within one year and ninety days after the occurrence of the events upon which the state law tort claims are based. N.Y. Gen. Mun. Law § 50-i(1). Defendants assert, without dispute, that Ricks failed to file a notice of claim within ninety days after June 13, 2006. Ricks also failed to commence this action within one year and ninety days after his claims accrued. Accordingly, this Court lacks jurisdiction to hear any state law claims that might be inferred from Ricks's Amended Complaint. Gibson v. Comm'r of Mental Health, No. 04 Civ. 4350 (SAS), 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006) ("Federal courts do not have jurisdiction to hear complaints from plaintiffs who have failed to comply with the notice of claim requirement . . . .").

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment dismissing Ricks's claims against Officers O'Hanlon and Rodriguez is granted in all respects. Defendants' motion for summary judgment dismissing Ricks's claims against Officer Casey is granted as to the excessive force claim at the 50th Precinct and the deliberate indifference to serious medical needs claim but denied with respect to Ricks's excessive force claim arising from his arrest.

Dated: January 19, 2010
New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Copies Mailed To:*

James Ricks, DIN #08A4020
Bare Hill Correctional Facility
Caller Box 20, 181 Brand Road
Malone, NY 12953
*Pro Se Plaintiff*

Bradford Collins Patrick, Esq.
New York City Law Department
100 Church Street
New York, NY 10007
*Counsel for Defendants*